WATTS, RESPONDENT, *v.* BILLINGS BENCH WATER ASSO-
CIATION, APPELLANT.

(No. 6,016.)

(Submitted January 4, 1927.  Decided January 27, 1927.)

[253 Pac. 260.]

*Waters and Watercourses—Irrigating Canals—Breaking of*
*Bank—Negligence in Maintenance—Proof of One Act of*
*Negligence Pleaded Sufficient, When—Evidence—Immaterial*
*Variance—Record on Appeal—Bills of Exceptions—Success-*
*ful Party Entitled to Include Exceptions in Appellant's*
*Bill—Amendments—Right to Apply to Supreme Court for*
*Leave to Prove Exceptions.*

Bills of Exceptions—Exceptions of Successful Party Proper to be In-
cluded in Bill Prepared by Appellant.
1.  Since the enactment of Chapter 35, Laws of 1907 (secs. 9394,
9751, Rev. Codes 1921), all matters affecting the substantial rights
of both plaintiff and defendant with relation to any order, rul-
ing or proceeding had in the trial court "at any stage of the trial"
of the cause may, under proper exception, be included in the bill
of exceptions prepared by the appellant under the Codes, whether
during the actual trial, on a preliminary matter, on motion for a
new trial or an appeal from the judgment.

Same—"Amendment" Offered by Successful Party—Refusal Error.
2.  Where, after defendant had rested, plaintiff moved for permis-
sion to reopen his case for the introduction of further testimony
on the ground that such testimony had only then been discovered,
taking an exception to the court's adverse ruling, the court's refusal to
incorporate the matter in defendant's (appellant's) bill of excep-
tions as an amendment at the time of its settlement, *held* error,
since, though not technically an "amendment," the matter proposed
as such may, under section 9394, *supra*, be properly incorporated in
a bill prepared in accordance with the provisions of section 9390,
Revised Codes of 1921.

Same—Successful Party may Petition Supreme Court for Leave to
Prove Exceptions.
3.  Where, under conditions as narrated in paragraph 2 above the
trial court refuses to incorporate the successful party's amendments
in the bill of exceptions·prepared by his appealing opponent, the
former may petition the supreme court for leave to prove his ex-
ceptions under section 9392, Revised Codes of 1921.

Waters and Watercourses—Irrigating Canals—Breaking of Bank—Negli-
gence—Proof of One Act Sufficient, When.
4.  To entitle plaintiff in an action for damages to his crops by the
breaking of the bank of an irrigating canal the complaint in

which alleged several distinct and independent acts of negligence on the part of defendant, he was not required to prove all of the acts stated, but proof of any one or more of them and that such negligence was the proximate cause of the injury was sufficient.

Appeal from Judgment—Insufficiency of Evidence—Extent of Review by Supreme Court.

5. On appeal from a judgment the review of the evidence by the supreme court under an assignment that it is insufficient to support the verdict and judgment is limited to an examination of the record to determine whether there is any substantial evidence to justify the result reached.

Appeal—Conflict in Evidence—Facts Assumed as Claimed by Successful Party.

6. Where the jury finds a verdict on conflicting evidence, the supreme court on appeal assumes that the facts were as claimed by respondent and will not reverse the judgment on the ground of alleged insufficiency of the evidence.

Waters and Watercourses—Failure to Repair Weakened Bank of Irrigating Canal—Evidence—Sufficiency to Sustain Verdict.

7. Evidence in an action for damages to crops caused by the breaking of one of the banks of an irrigating canal, *held* sufficient to warrant a verdict and judgment in favor of plaintiff on one of the grounds of negligence alleged in the complaint, to-wit, failure to repair and re-enforce the bank with knowledge of its weakened condition and placing in the canal more water than it could safely carry in its then condition, which negligence was the proximate cause of the injury.

Trial—Reopening of Plaintiff's Case—Refusal Held Error.

8. Where at the close of defendant's case plaintiff asked permission to reopen his case for the purpose of introducing the testimony of witnesses whose knowledge of pertinent facts had only then been divulged to him, the court erred in denying the request.

Same—Variance—Failure of Proof—When Immaterial.

9. If there was a variance or failure of proof between plaintiff's allegation in the complaint that one of the banks of defendant's irrigating canal was not sufficient to withstand the pressure of the water in the canal (according to defendant's contention referring to lateral pressure), and his proof indicating cutting away of the bank by overflow, it was immaterial, the record showing that defendant was neither surprised nor prejudiced thereby.

Waters and Watercourses—Breaking of Bank of Canal—Evidence Held not to Show Physical Impossibility.

10. Testimony of witnesses that they saw water first trickle and then flow over the top of one of the banks of an irrigating canal and the bank break and crumble away quickly, claimed by defendant to have been a physical impossibility because of the presence of a flume conducting the water to the canal, which flume was several inches lower than the banks of the canal and designed as a vent for the escape of surplus water, in the light of other evidence *held* not so improbable as to render it unworthy of belief.

---

5. See 2 R. C. L. 194.
8. See 26 R. C. L. 1043.

[78 Mont. 199.]

Same—Expert Testimony—Jury not Bound by.

11.   In case of a conflict between the testimony of an expert (civil engineer), who testified in behalf of defendant in support of the defense of an act of God, that there was a subsidence of the earth underneath an irrigating ditch, and that of lay witnesses testifying for plaintiff to the break of one of the banks of the canal but saying that they saw no subsidence, the jurors were not bound to accept the testimony of the expert, but were at liberty to weigh all of the facts and circumstances adduced, including the opinion of the expert, determining the case according to the preponderance of the evidence as they saw it.

[1]   Appeal and Error, 3 C. J., sec. 802, p. 895, n. 52; sec. 806, p. 907, n. 42; sec. 807, p. 908, n. 61; sec. 827, p. 940, n. 20; sec. 865, p. 969, n. 46.

[2]   Amendment, 2 C. J., p. 1317, n. 69, 73. Appeal and Error, 4 C. J., sec. 1936, p. 316, n. 32.

[3]   Appeal and Error, 4 C. J., sec. 1869, p. 260, n. 29; p. 261, n. 30.

[4]   Negligence, 29 Cyc., p. 587, n. 59, 60, 64. Waters, 40 Cyc., p. 839, n. 74, 77.

[5]   Appeal and Error, 4 C. J., sec. 2558, p. 666, n. 21 New.

[6]   Appeal and Error, 4 C. J., sec. 2836, p. 858, n. 3.

[7]   Waters, 40 Cyc. p. 839, n. 77.

[8]   Trial, 38 Cyc., p. 1361, n. 57, 59; p. 1362, n. 63.

[9]   Waters, 40 Cyc., p. 839, n. 74.

[10]   Waters, 40 Cyc., p. 839, n. 77.

[11]   Evidence, 22 C. J., sec. 823, p. 728, n. 73; p. 729, n. 77; p. 730, n. 78; sec 828, p. 738, n. 78.

*Appeal from District Court, Yellowstone County; O. F. Goddard, Judge.*

ACTION by Ollie Watts against the Billings Bench Water Association.   Judgment for plaintiff and defendant appeals. Affirmed.

*Messrs. Wood & Cooke,* for Appellant, submitted briefs; *Mr. Sterling M. Wood* argued the cause orally.

Concurrent negligence is pleaded but proof thereof was not made.   (*Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70; *Forsell* v. *Pittsburg & Montana Copper Co.,* 38 Mont. 403, 100 Pac. 218; *Walsh* v. *East Butte Copper Min. Co.,* 66 Mont. 592, 214 Pac. 641; *Smith* v. *Bonner,* 63 Mont. 571, 208 Pac. 603; *Kirn*

11.   See 11 R. C. L. 586.

v. *Harvey*, 200 Mo. App. 433, 208 S. W. 479; *Fisher* v. *Butte Electric Ry. Co.*, 72 Mont. 594, 235 Pac. 330; *Hunt* v. *White Sulphur Springs & Yellowstone Park Ry. Co.*, 63 Mont. 508, 208 Pac. 917.)

Rebuttal case of plaintiff below discards the negligence pleaded; hence there was a failure of proof. (*American Livestock & Loan Co.* v. *Great Northern Ry. Co.*, 48 Mont. 495, 138 Pac. 1102; *Forsell* v. *Pittsburgh & Montana Copper Co., supra; Bracey* v. *Northwestern Imp. Co.*, 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706.)

If rebuttal evidence was competent it conflicts with physical facts, and hence there is a failure of proof. (*Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141.)

The evidence does not establish a causal connection between the negligence pleaded and the injury complained of or that such negligence proximately caused the injury. (*Fleming* v. *Lockwood*, 36 Mont. 384, 122 Am. St. Rep. 375, 13 Ann. Cas. 263, 14 L. R. A. (n. s.) 628, 92 Pac. 962; *Billings Realty Co.*, v. *Big Ditch Co.*, 43 Mont. 251, 115 Pac. 828; *Jeffers* v. *Montana Power Co.*, 68 Mont. 114, 217 Pac. 652; *Calvert* v. *Anderson*, 73 Mont. 551, 236 Pac. 847; *Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515; *Fisher* v. *Butte Electric Ry. Co.*, 72 Mont. 594, 235 Pac. 330; *Wallace* v. *Chicago M. & P. S. Ry. Co.*, 48 Mont. 427, 138 Pac. 499; *Fusselman* v. *Yellowstone Valley L. & I. Co.*, 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473; *Lyon* v. *Chicago etc. Ry. Co.*, 50 Mont. 532, 148 Pac. 386.)

Error was committed in permitting the witnesses Johnston and Reckard to testify in rebuttal. (Sec. 9349, Rev. Codes 1921; also, *Maloney* v. *King*, 30 Mont. 158, 76 Pac. 4; *Anaconda Copper Min. Co.* v. *Heinze*, 27 Mont. 161, 69 Pac. 909, 22 Morr. Min. Rep. 346.)

*Mr. T. F. Shea* and *Mr. R. G. Wiggenhorn,* for Respondent, submitted briefs; *Mr. Shea* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from judgment in favor of plaintiff in an action for damages for the destruction of crops by the breaking of defendant's irrigation canal.

The defendant is the owner of a large ditch or canal constructed some nineteen years prior to the injury complained of for the purpose of diverting water from the Yellowstone River to and upon lands owned or controlled by stockholders in the association. North of the city of Billings this canal follows the base of a high bluff or "rim-rock" and from its south bank the ground slopes precipitately to the valley below. On this slope, at a considerable distance below the level of the canal, the plaintiff held under lease a plot of land on which he raised produce for market. On a Saturday in July, 1924, and at a time when plaintiff had a considerable crop well along toward completion of its growth, the canal broke at a point immediately above plaintiff's lands, and, by erosion of water and the deposit of earth, sand and debris thereon, destroyed plaintiff's crops. Plaintiff presented a claim to the defendant and thereafter commenced action for damages.

Issue was joined in the trial court and the cause tried in the [1, 2] usual manner; the trial resulted in verdict and judgment for the plaintiff. No motion for a new trial was made; the defendant appealed directly from the judgment, and in due time presented and served its bill of exceptions, whereupon the plaintiff served and filed proposed amendments thereto. These amendments, in the main, sought to have incorporated in the bill rulings made against the plaintiff, with his exceptions thereto, and offers of proof made by the plaintiff and excluded by the court, and in particular sought to show the

facts with reference to the introduction of the testimony of two witnesses discovered by the plaintiff after both the plaintiff and the defendant had rested. At that time plaintiff's counsel moved the court to permit the plaintiff to reopen his case; he supported the motion by affidavit in which he set forth the facts and further asserted that the evidence was then discovered only because the witnesses, believing the case to be ended, divulged their knowledge. This motion was denied, but the court thereafter permitted these two witnesses to testify in rebuttal over the objection of defendant that their testimony was a part of plaintiff's case in chief and improper rebuttal testimony.

The court refused the amendments and settled and allowed the bill of exceptions as presented by the defendant; therein it only appears that the testimony of the two witnesses mentioned was admitted as rebuttal testimony, and defendant assigns error on the court's ruling against it in this regard.

During the month of July, 1926, counsel for plaintiff filed in this court a "petition to prove exceptions," but was advised by the Chief Justice that, as the court was in recess and could not then be assembled, counsel might prepare their briefs as though the amendments were made, and that "when the matter comes up for consideration we will consider the amendments to the bill of exceptions as proposed to have been made, in so far as they should be made." This procedure was followed, and, in addition to briefs on the merits of the appeal, we have before us briefs on the question of the right of the plaintiff to have the matter set forth in his petition incorporated in the bill of exceptions settled and allowed and before us for consideration.

1. Counsel for defendant contend that the matter which plaintiff sought to have incorporated in the bill does not constitute "amendments" thereto, as contemplated by the provisions of section 9390, Revised Codes of 1921, under which the

bill was prepared and settled, and which, in so far as it affects the question, reads as follows: "The party appealing from a final judgment, if he desires to present on appeal the proceedings had at the trial, must, * * * prepare and file with the clerk of the court and serve upon the adverse party a bill of exceptions, containing all of the proceedings had at the trial upon which he relies, * * * within ten days after such service, the adverse party may propose amendments thereto," *etc.*

Counsel further contend that it is only the party presenting the bill of exceptions for settlement who is accorded the right to petition this court to prove exceptions under the provisions of section 9392, Revised Codes of 1921, and Rule V of this court, and that this court has no authority to review the disallowance of amendments proposed by the prevailing party to a bill of exceptions taken by the losing party, and that the only manner in which the prevailing party in an action can present exceptions on appeal is by complying with section 9389, which provides that "a bill containing an exception to any decision may be presented to the court or judge for settlement, at the time the decision is made, and after having been settled shall be signed by the judge and filed by the clerk."

Section 9392, above, provides that "if the judge in any case refuse to allow an exception in accordance with the facts, the party desiring the bill settled may apply by petition to the supreme court to prove the same; the application may be made in the mode and manner, and under such regulations as that court may prescribe"; while Rule V of this court merely prescribes the procedure to be followed.

In support of their contention counsel rely upon the decision in *In re Gates* 90 Cal. 257, 27 Pac. 195, construing California statutes similar to ours just quoted and declaring in accordance with defendant's contentions above, but in which it is said: "This court can interfere with such statement or bill

only in the cases provided by statute, and the only case thus provided is found in said section 652 [Code Civ. Proc.]'' (similar to our section 9392 above), while the only provisions California then had for the settlement of bills of exceptions were similar to our sections 9389 and 9390, above quoted.

Counsel assert that this court, by analogy, sustained a portion of their contention in *Forrester* v. *Boston & Montana etc. Co.,* 23 Mont. 122, 58 Pac. 40, when it said that the court had no power, under section 1157, Code of Civil Procedure of 1895 (now section 9392), to strike out amendments in a bill of exceptions on the application of the prevailing party. However, that statement was made only incidentally and after the court had held that ''the petition must be dismissed upon the ground that the amendments allowed are immaterial; hence we do not consider or decide, but expressly reserve, all questions which might arise, were the amendments material, in respect to the power and right of the supreme court, under section 1157''; and it must be remembered that, as in the California case of *In re Gates,* the above-quoted sections were all that we had on the subject of bills of exceptions at the time the decision in the *Forrester Case* was rendered. Nor have the decisions in *In re Application of Plume,* 23 Mont. 41, 57 Pac. 408, and *Harding* v. *McLaughlin,* 23 Mont. 334, 58 Pac. 865, any application here, as those decisions merely hold that section 1157 (now section 9392) does not apply to cases wherein the court refuses to settle any bill of exceptions whatsoever.

Were the above sections the only provisions which we now have on the subject, the decision in the *Gates Case* and counsel's position would be unassailable, as section 9390 provides only for the inclusion in the bill of those matters on which the defeated party relies for a reversal of the judgment, and section 9392, read only in connection with that section 9390, would accord the right to petition this court for the proving of exceptions only to the party appealing, while ''amendments thereto'' can refer only to a ''change for the better by

freeing from faults, vices, errors or defects, or by supplying deficiencies.'' (Standard Dictionary.) This being the condition of the statutes with reference to bills of exceptions, a strict construction thereof, as they existed prior to 1907, would require each party to an action, not knowing which would finally prevail therein, to settle a bill as to each exception taken to a ruling or decision throughout the trial, or lose the benefit of that exception, as to the prevailing party, and on appeal leave the record in such a condition that the supreme court would be compelled to reverse the final judgment in spite of the fact that, had the court the full record before it, substantial justice would require an affirmance.

With our procedure on appeal in this condition, and, it may well be, with the above cited cases in mind, our legislature enacted Chapter 35, Laws of 1907. This enactment contains two sections and bears the following significant title: ''An Act relating to bills of exceptions and statements of the case, providing that the exceptions of the prevailing party shall be incorporated therein, and providing for review by the supreme court on appeal of such exceptions and the orders and rulings relating thereto.''

Section 1 of the Act, now section 9394, Revised Codes of 1921, provides that: ''Hereafter all district courts and judges, on settlement and allowance of any bill of exceptions at any stage of the trial of a cause, shall, upon demand of either party, or, in the discretion of said court or judge upon its or his own motion, incorporate into such bill of exceptions all rulings, or orders, or proceedings made in the cause against either of the parties, affecting the substantial rights of either, together with the objections and exceptions thereto properly made and reserved, and the same shall be settled and allowed as a part of such bill.''

Section 2 of the Act, now section 9751, Revised Codes of 1921, reads as follows: ''Whenever the record on appeal shall

contain a bill of exceptions or statement of the case properly settled, setting forth any order, ruling, or proceeding of the trial court against the respondent, affecting his substantial rights on the appeal of said cause, together with the objection and exception of such respondent properly made, and reserved, settled, and allowed in such bill of exceptions or statement, the supreme court on such appeal shall consider such orders, rulings, or proceedings, and the objections and exceptions thereto, and shall reverse or affirm the cause on said appeal according to the substantial rights of the respective parties, as shown upon the record. And no cause shall be reversed upon appeal by reason of any error committed by the trial court against the appellant, where the record shows that the same result would have been attained had such trial court not committed an error or errors against the respondent.''

Counsel for defendant assert that, by reason of the use of the phrase, ''at any stage of the trial of a cause,'' section 9394 above cannot apply to a bill prepared and presented under section 9390, but must be construed to apply only to bills prepared at ''the time the decision is made'' during the trial, and therefore applies only to section 9389. In the first place, the provisions of section 9394 are entirely too broad to apply only to bills of exceptions settled in accordance with the provisions of section 9389, which applies only to disjunctive rulings and decisions. Secondly, while the settlement of the bill of exceptions comes after the close of the trial, if we consider the term ''trial'' in its strict technical sense, when the term is used with reference to the requirements concerning bills of exceptions, it is not used in its limited and restricted sense, but in a general sense. (*Jenks* v. *State*, 39 Ind. 1; *Hotsenpiller* v. *State*, 144 Ind. 9, 43 N. E. 234.)

In California it is held that the settlement of a bill of exceptions is a ''proceeding in the cause'' (*Sprigg* v. *Barber*, 118 Cal. 591, 50 Pac. 682, *Stonesifer* v. *Kilburn*, 94 Cal. 33, 29

Pac. 332), and in *Finn* v. *Spagnoli,* 67 Cal. 330, 7 Pac. 746, wherein a party moved for a change of the place of trial for the hearing on settlement of a bill of exceptions on motion for a new trial, it was contended that the term "trial" used in the statute was not broad enough to permit such a motion after the close of the trial of the cause, but the supreme court held otherwise, and this ruling was followed by this court in *State ex rel. Carleton* v. *District Court,* 33 Mont. 138, 8 Ann. Cas. 752, 82 Pac. 789.

It seems to us clear that the intention of the legislature was to simplify the procedure on settlement of bills of exceptions, and to provide for the inclusion in the only bill of exceptions ordinarily necessary on an appeal those matters which might affect the substantial rights of the respondent in a case, as well as those affecting the substantial rights of the appellant, and that, in the employment of the somewhat loose phrase, "at any stage of the trial of a cause," that body intended to include within the provisions of the enactment any bill of exceptions which might be prepared under the Codes, whether during the actual trial, on a preliminary matter, on motion for a new trial, or on appeal from the judgment. As was said in *State ex rel. La France Copper Co.* v. *District Court,* 40 Mont. 206, 105 Pac. 721: "Since by virtue of the provisions of sections 6792 and 7118 [now 9394 and 9751], the exceptions of both parties may now be incorporated in the record, the party prevailing in the court below is always in a position to inform this court that he has not been permitted to introduce all of his evidence," *etc.*

By the beneficent provisions of these statutes the doctrine of compensatory error is established and this court permitted and required to dispose of a cause on its merits and according to the substantial rights of the parties regardless of technicalities not affecting those rights. (*Manhattan Co.* v. *White,* 48 Mont. 565, 140 Pac. 90; *Olcott* v. *Gebo,* 54 Mont. 35, 166 Pac. 300; *Church* v. *Zywert,* 58 Mont. 102, 190 Pac. 291; *Montana Live Stock Co.* v. *Stewart,* 58 Mont. 221, 190 Pac. 985.)

While, therefore, the matter proposed as amendments by the plaintiff did not, technically speaking, constitute amendments to the defendant's bill, it was such matter as may, by the provisions of section 9394, be incorporated in a bill of exceptions prepared in accordance with the provisions of section 9390, and the filing and presentation of the so-called amendments was a sufficient demand by the party plaintiff. that such matter be incorporated in the bill—especially so as to the proceedings had at the time plaintiff sought permission to reopen his case. As to the offers of proof made and excluded by the court, the plaintiff was only seeking, on the settlement of the bill, to do that which this court in the *La France Case* above said the prevailing party is always in a position to do.

Under these conditions, after the trial judge had refused to [3] allow plaintiff's exceptions "in accordance with the facts," the plaintiff was as much "the party desiring the bill settled," mentioned in section 9392, as the defendant would have been had the court refused to allow certain exceptions on which the defendant relied for a reversal. The plaintiff was therefore entitled to petition this court for leave to prove his exceptions, and, under the disposition made by the Chief Justice of the application as above related, we will consider those exceptions found. in the application which we deem important to a disposition of the cause as incorporated in the bill of exceptions.

2. The first question raised on the merits is one of pleading, [4] as determining the *quantum* of proof necessary to support a judgment in favor of plaintiff. This question is raised by assignments to the effect that the court erred in overruling a motion for nonsuit and a motion for a directed verdict and in modifying defendant's offered instruction numbered 9.

The pleadings present two opposing theories as to the cause of the break in the canal; the plaintiff's theory being that the canal broke by reason of the turning into it of a greater

amount of water than the south bank thereof could withstand and while the bank was in a weakened condition due to faulty construction or deterioration, and the negligent failure of the defendant to repair or strengthen the bank after knowledge of its weakened condition. The defendant's theory is that the break was caused by a sudden subsidence of the terrain beneath the canal, through the workings of nature, constituting an "act of God."

After the usual preliminary allegations in such actions, including that of the duty of the defendant to exercise reasonable care and diligence in maintaining and operating its canal, paragraph 6 of the complaint alleges that the canal, at the point of the break and thereabouts, was negligently constructed through loose, porous and sandy soil with a thin, frail bank and without lateral support; "that said lower bank was wholly inadequate to retain the waters flowing in said ditch and which it was calculated to carry, or to withstand the pressure of such waters."

Paragraph 7 then alleges: "That the defendant failed to exercise reasonable diligence and care in maintaining and operating said ditch and negligently and carelessly and without regard to the property rights of the plaintiff and others, on the fourteenth day of July, 1924, and at all times prior thereto, the defendant carried and conducted water in said ditch while the said lower bank thereof was wholly inadequate as aforesaid and while the said place was so improperly constructed and unfit to carry the said water carried therein or any considerable part there," *etc.* It is then alleged that the defendant had full knowledge of the condition of the ditch or by the exercise of ordinary care should have known thereof. This paragraph further alleges that, on the day in question and long prior thereto, the defendant wholly failed and neglected to strengthen, reinforce or repair the bank, which in the exercise of reasonable care it should have done, and failed to provide adequate and

sufficient safeguards, flumes, walls and barriers, or a sufficiently strong conduit, to prevent the escape of the water.

Paragraph 8 alleges that, on the day of the break, the defendant negligently and carelessly overtaxed the capacity of the ditch by carrying too large a head of water therein, so as to cause too great a pressure and strain upon the bank and so as to overflow the said bank and to undermine and weaken the same. "That on the said fourteenth day of July, 1924, the said lower bank of said ditch at said place had become thoroughly weakened and wholly insufficient to safely conduct any water of any considerable quantity * * * which fact the defendant knew, or in the exercise of reasonable care and caution should have known."

Paragraph 9 alleges that, on the day in question, the defendant negligently "carried in said ditch an excess amount of water and far more water than said lower bank * * * would withstand and because and on account of the said negligent acts aforesaid" the ditch broke and the damage resulted.

Defendant contends that by this complaint plaintiff does not rely upon independent acts of negligence pleaded, but has pleaded all of the acts set out concurrently and was required to prove every act alleged in order to recover. Counsel for defendant presented this theory on the settlement of instructions and in offered instruction No. 9, which reads as follows: "You are instructed that the defendant in this case cannot be held liable to the plaintiff for the damages complained of merely by virtue of the fact that the said company owned the canal involved, if it did own the canal, at the time of the accident, but the liability, if any, of the defendant company to the plaintiff in this case will depend upon proof by the plaintiff of (*) the acts of negligence pleaded and that such negligence was the proximate cause of the injury complained of. In other words, I instruct you in this case that the defendant company is not an insurer and can be held liable in damages for

negligence only when such negligence is both pleaded and proved.''

On objection of the plaintiff that the instruction compelled the plaintiff to prove and the jury to find all of the acts of negligence alleged, the court modified the instruction by inserting at the point where the star is placed in the offered instruction the words, ''one or more of.''

In *Forsell* v. *Pittsburg & Montana Copper Co.*, 38 Mont. 403, 100 Pac. 218, following the decision in *Wormsdorf* v. *Detroit City Ry. Co.*, 75 Mich. 472, 13 Am. St. Rep. 453, 42 N. W. 1000, both of which cases were personal injury actions, this court announced the rule contended for by appellant as applying to the instant case. These two cases have frequently been erroneously cited as laying down a rule applicable to the pleadings in all negligence cases and are frequently misunderstood. Thus in *Moehlenbrock* v. *Parke, Davis & Co.*, 141 Minn. 154, 169 N. W. 541, wherein the rule here contended for was asserted, referring to the *Forsell Case* the supreme court of Minnesota said: ''The last-mentioned case, in an extended opinion, sustains this doctrine, which to many may seem one of refined technicality.''

Those decisions contain a correct rule of interpretation where the complaint shows that the several acts of negligence alleged combined as to proximate cause of the injury, while no one of such acts alone can be said to have been the proximate cause of the injury. The corollary to this rule is, however, as well established as is the rule.

The *Wormsdorf Case* was explained and distinguished by the supreme court of Michigan in *Whipple* v. *Michigan Central Ry. Co.*, 143 Mich. 41, 106 N. W. 690, and like treatment was accorded the *Forsell Case* by this court in *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70. The latest expression of the full rule as to the pleading and proof of negligence is found in *Walsh* v. *East Butte Copper Min. Co.*, 66 Mont. 592, 214 Pac. 641, as

follows: When a plaintiff "states several distinct acts of negligence, any one of which is, when proved, shown to be a proximate cause of the injury, his action will not be defeated by failure to prove all, and he may recover on proof of one or more of the acts of negligence complained of; but, where the injury upon which the suit for damages is based is alleged to be the result of several acts of negligence, no one of which however is charged to have caused it alone, proof of a single one of the acts will not suffice." The fact conditions alleged are thus determinative as to the application of the rule announced, rather than the mere copulation of the alleged acts of negligence.

The contention here made was asserted in both the *Walsh Case* and the *Frederick Case*, and in each the pleader had alleged two or more acts of negligence in the conjunctive. In the *Walsh Case* the acts charged were the partial closing of the channel of a stream by the deposit of tailings and the negligent construction of a dam by which was impounded a quantity of water greater than the wall of the dam could withstand, but, as it was alleged in the complaint that the channel of the creek would have been ample to carry away the water on the breaking of the dam had it not been for the concurrent act of negligence in reducing the capacity of the channel, the plaintiff was required to prove both acts of negligence alleged. In the *Frederick Case* the plaintiff alleged negligent construction and maintenance of two reservoirs and the overtaxing of the lower dam by a discharge of water from the upper; the court said: "The complaint in this action charges negligence with respect to the upper reservoir, but it also discloses beyond a question that it was the breaking of the dam at the lower reservoir which caused the plaintiff's injury. * * * In fact, as we understand the complaint, the allegations with respect to the negligent use of the upper reservoir are wholly immaterial, in the sense that, had they been omitted, plaintiff would still have

stated his cause of action, * * * it was immaterial, as a matter of pleading or as a matter of fact, for what reason the surplus water was let into the lower reservoir, * * * if the allegations with respect to negligence at the lower reservoir were proven.''

So, in the case at bar, it was the breaking of the bank of the canal at the point mentioned which caused plaintiff's injury, and if, through any one of the acts of negligence alleged, the bank at that point was insufficient to withstand the head of water carried to that point by the defendant with knowledge, either actual or constructive, of the condition of the bank, it was wholly immaterial how the canal was originally constructed.

The complaint does not so allege concurrent acts of negligence as to require proof of all of the acts of negligence alleged, but proof of ''one or more of the acts of negligence pleaded, and that such negligence was the proximate cause of the injury complained of,'' was sufficient. This contention of defendant is therefore without merit, and the instruction complained of correctly stated the law applicable to the pleading and the facts.

3. It is next contended that the evidence is insufficient to support the verdict and judgment, and particularly that the evidence does not establish a causal connection between the negligence pleaded and the injury complained of, or that such negligence proximately caused the injury.

No motion for a new trial was made. The appeal is from [5, 6] the judgment; on such an appeal ''the review of the evidence by this court is limited to an examination of the record to determine whether there is any substantial evidence to justify the verdict'' (*State* v. *Popa,* 56 Mont. 587, 185 Pac. 1114; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601; *Dawes* v. *City of Great Falls,* 31 Mont. 9, 77 Pac. 309); and the rule is too well established to require the citation of authorities that where there is a substantial conflict in the evidence this court

will not reverse the judgment of the lower court on the ground of alleged insufficiency of the evidence. Where the jury finds a verdict on conflicting evidence this court must, on appeal, assume that the facts were as claimed by the prevailing party. (*Hanson Sheep Co.* v. *Farmers & Traders' State Bank,* 53 Mont. 324, 163 Pac. 1151.) Being governed by these rules, we are called upon only to canvass the testimony introduced by the plaintiff and determine whether such evidence substantiates the allegations of the complaint.

One Colton, an engineer employed by the defendant at the [7] time the canal was constructed, testified that the canal was originally built six feet deep and twelve to fourteen feet wide at the bottom, the south bank being six feet thick at the top; that this bank was constructed of light sandy loam; and that "the wind would wear it somewhat"; that if the evidence showed that at the time of the break the bank at the top was only three feet across, "such discrepancy between that space and the six feet could be accounted for by this process of nature. It is reasonable."

The plaintiff testified that "the width of the ditch bank where the break occurred was no more than three or four feet on top; it was a narrow point; * * * there were three places there where it was narrow and they were all seeping. The pitch of the lower bank where it broke, I would call it straight down from the ditch bank, * * * that is in just three small places; this was one of them." "During the season of 1924, before the break, I found plenty of water there all the time and wet and boggy there, * * * water seeping through the bank; * * * up next the bank it was miry and mucky; * * * I noticed it there for a month before the break."

Plaintiff further testified that he had observed the ditch prior to 1924 and never theretofore saw the water higher than within twelve to eighteen inches from the top, but that on the

morning on which the ditch broke the water was "just level with the bank." He testified that the ditch tender had complained to him of the overplus of water that was being thrown into the canal, particularly on Saturdays when the farmers would go to town; that the man stated that he could not help the condition; that he had called up the "headgate," but they would not seemingly shut down the headgate.

Other testimony was introduced to the effect that, just prior to the break, a greater amount of water than ever before carried therein was running in the ditch. One witness testified that he was forced to abandon a footpath on the north bank which he had used in years past because it had been flooded, and there was testimony to the effect that the top of the south bank was muddy.

It is not necessary to determine whether the testimony of the [8] two witnesses mentioned in paragraph 1 of this opinion was proper rebuttal testimony; it was properly admissible either as rebuttal or as a part of plaintiff's case in chief, and, if not proper rebuttal, plaintiff should have been permitted to reopen his case, on the showing made, for the purpose of introducing it. These witnesses testified that they were on top of the "rim-rock," and from there saw water first trickle and then flow over the top of the bank and the bank quickly break and crumble away; they negatived the theory that the ground subsided breaking the bank.

This evidence, if believed by the jury, was sufficient to warrant the verdict and judgment on the theory that one of the grounds of negligence alleged, to-wit, that the defendant had neglected to repair and re-enforce the south bank of the canal when it was in a weakened condition, irrespective of the cause of its weakness, and that, with knowledge of such weakness, either actual or constructive, the defendant had placed in the canal an excess of water over what it was capable of carrying

in its weakened condition, which negligence was the proximate cause of the injury complained of.

4. Defendant asserts that, by the testimony introduced in re-
[9] buttal, the plaintiff discarded the negligence alleged and established negligence not pleaded, as the allegation that the bank was not sufficient to "withstand" the pressure of the water carried in the ditch on the day in question refers to lateral pressure and not to the cutting of the bank by overflow, and therefore a variance or failure of proof resulted. This assertion is not borne out by the record. The allegations of the complaint set out above sufficiently allege breaking by reason of overflow, and, although plaintiff's proof in chief seems to establish a breaking by lateral pressure, the distinction drawn by defendant is too technical to warrant us in holding that there was a failure of proof (*Mosher* v. *Sutton Theater Co.*, 48 Mont. 137, 137 Pac. 534); while, if we concede that there was a variance, it was immaterial as it does not appear from the record that the defendant was either surprised or prejudiced thereby. (Sec. 9183, Rev. Codes 1921; *Stevens* v. *Hines*, 63 Mont. 94, 206 Pac. 441; *Robinson* v. *Helena Light & Ry. Co.*, 38 Mont. 222, 99 Pac. 837.)

5. Defendant urges that the testimony of the two witnesses
[10] called on rebuttal should be discarded as contrary to the physical facts shown. The physical facts referred to are that witnesses testified that there was a flume in the canal some 200 or 300 feet below the point of the break and that this flume was set lower than the ditch; while the ditch was six feet deep and the sides of the flume six feet high, the bottom of the flume was lower than the bottom of the ditch; and that, in case of excess of water, it could not overflow the banks as it would go over the side of the flume or safety valve. There was testimony to the effect that on the day in question water was overflowing, not the flume, but the approach to the flume. One witness testified that "there was not an awful lot of clearance on the

ditch immediately west of it [the flume] ; I mean the bank was a little higher.'' There was testimony to the effect that the bank of the ditch was uneven, and there was no testimony as to the width of the flume; while the flume may have been set, for some unexplained reason, a little below the level of the bottom of the ditch, it is reasonable to presume that, in doing so, the flume was made of a sufficient width to carry the water flowing in the ditch. In the light of the other evidence in the case, the testimony of these two witnesses is not so inherently improbable that it cannot be true and therefore cannot be discarded by this court. (*Moelleur* v. *Moelleur,* 55 Mont. 30, 173 Pac. 419.)

6. Finally, it is contended that the ''record affirmatively establishes, without dispute, the act of God pleaded by the defendant.'' An engineer testifying for defendant gave his opinion, based on examination and the testimony of other witnesses, that ''the break was caused by a slumping of the slope which lay immediately under the bottom of the main canal at that point, which either broke open the bottom of the main canal, or carried it with it, precipitating the whole canal into this hole which you now observe at the place of this break.'' He explained his reasons for arriving at that conclusion. A witness, called by the plaintiff, after testifying to conditions, stated in answer to a question that he could not say what caused the break. While no testimony was introduced directly contradicting the opinion of the expert called by the defendant, three eye-witnesses testifying to the break of the bank said they saw no subsidence. Each party merely introduced evidence to support his or its theory as to the cause of the break, which thus became a question for the jury to decide. This was not a case wherein it was not possible for the jury to form its own conclusions from the whole of the testimony as to the cause of the break (*Cummings* v. *Reins Copper Co.,* 40 Mont. 599, 107 Pac. 904), and the jurors were not bound

to accept the opinion of the expert based on facts and circumstances fully disclosed to them, but were at liberty to weigh all of the facts and circumstances adduced, including the opinion of the expert, and determine the ultimate question according to the preponderance of the evidence as they saw it (Jones' Handbook on Evidence, 494; 22 C. J. 738).

The evidence introduced by the plaintiff tended to establish the fact that the bank broke by reason of the neglect of the defendant to repair or re-enforce it at the point of the break after it had full knowledge of the weakened condition of the bank at that point, or should have had such knowledge by the exercise of reasonable care in its inspection of the canal, and was sufficient to support the verdict of the jury if that body believed the evidence of the plaintiff and disbelieved that of the defendant.

No substantial error appearing in the record, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and STARK concur.

MR. JUSTICE MYERS did not hear the argument and takes no part in the foregoing decision.

Rehearing denied February 14, 1927.